---
Opinion.
---

# Richmond.

## MILLER & CO. v. SIMPSON.

### November 21, 1907.

1. PARTNERSHIP—*What Constitutes.*—A mere participation in profits does not always constitute the participant a partner, but if parties have a community of interest in the profits as such, if they agree that something shall be attempted with a view to gain, and that the gain shall be shared by the parties to the agreement, this makes them partners. It is not essential that the parties shall, by agreements be bound to share the losses.

2. PARTNERSHIP—*Liability for Losses.*—If an agreement be entered into between two or more persons to form a partnership, each partner is entitled to share in the profits, and will also have to share in the losses without any provision to the latter effect in the agreement, as the law will impose that burden.

Appeal from a decree of the Corporation Court of the city of Staunton. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*J. M. Perry,* for the appellant.

*Quarles & Pilson,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

In the year 1901, H. Clay Miller, appellant, entered into a

partnership with one Bradley for the establishment and conduct of a retail dry goods business in the city of Staunton, Miller contributing the capital to conduct the business, and Bradley his labor and services. In the same store they had a "ready-to-wear" department from the inception of their business, and the business proved successful. In the fall of 1903, Miller bought out Bradley's interest in the entire business, and thereafter conducted it, including the "ready-to-wear" department, under the style of H. Clay Miller & Co., and this business also proved successful.

During the fall months, viz.: September, October, November and December, of the years 1901 and 1902, Miller and Bradley employed appellee, Mrs. Cornelia J. Simpson, an expert dress-maker, at a salary of $12 per week, placing her in charge of the "ready-to-wear" department; and during the corresponding months of the year 1903 Miller and Bradley, and then H. Clay Miller & Co., employed her in the same capacity at a salary of $15 per week. She was not employed, either by Miller & Bradley or H. Clay Miller & Co., except during the four months named, when the "season" was on. During her employment, first with Miller & Bradley, and then with H. Clay Miller & Co., appellee became fully acquainted with the details of the business of the "ready-to-wear" department, knew the cost and selling prices of all goods handled, and the daily sales thereof, and, in this way, was fully acquainted with the profits of the department.

According to Miller's own testimony, appellee was unwilling to come back to the store for the season of 1904 for employment for only four months, and some new arrangement between the parties was, therefore, necessary if they were to remain together. Looking to have appellee remain with him in business, appellant entered into negotiations with her during the summer of 1904, which resulted in her agreeing to continue with him in charge of the "ready-to-wear" department; and, on the 12th of September, 1904, their contract was reduced to writing, though

it appears not to have been signed by the parties until September 21, 1904. This contract is as follows:

"1st. It is hereby mutually agreed between H. Clay Miller, party of the first part, and Mrs. C. J. Simpson, party of the second part, witnesseth:

"2nd. That, in consideration for the sum of $1,000.00 paid by party of the second part to party of the first part, of which this agreement is receipt in full, party of the second part shall share and share alike in the profits of the ready-to-wear department of the business in Staunton, Va., of H. Clay Miller & Co., said ready-to-wear department consisting of suits, cloaks, separate jackets and skirts, and shirt waists, if deemed advisable by both parties to add these last garments to the department.

"3rd. That party of the second part agrees to furnish to the department her undivided time and attention, and to pay all expenses of alterations in garments incurred by the department.

4th. That all expenses of the department, such as express, freight, etc., shall be charged to the department separately, and that an accurate account of sales, purchases and expenses shall be kept of this department.

"5th. That party of the first part shall furnish store-room and the use of his clerks to sell the goods in this department, and shall furnish like amount of capital for running said department, $1,000.00, of which the stock on hand at September 1st shall be considered a part as mutually agreed, in value.

"6th. That at the 1st of each January stock shall be taken in department and profits determined.

"7th. That during the year, party of the second part shall have a drawing account from the department, not to exceed $15 a week, and same to be charged to her account.

"8th. That after profits are determined, the account of party of the first part shall be credited with the amounts drawn by party of the second part, and the amounts used to defray the

expenses of alterations, all other expenses being borne jointly.

"9th. That, if, after the above has been done, there shall be profits undivided, the amount shall be equally credited to the accounts of both parties, to be further used in the business.

"That if ever the department proves unsuccessful, and it is agreed to abolish same, the stock on hand shall be sold and equal division made. Witness the seals this .......... day of September, 1904.

"(SEAL)  H. CLAY MILLER & CO.<br>
"(SEAL)  CORNELIA J. SIMPSON."

That appellee paid to appellant the $1,000.00 stipulated for in the contract is conceded, and for the reason that it was agreed between the parties that appellant was to handle the finances of the business to be conducted, pay all bills, etc.

This "ready-to-wear" department, in charge of appellee, was conducted with success until the summer of 1906, when, for reasons satisfactory to her, and after a correspondence with appellant, it was terminated, and she sought to have an accounting from appellant as to the assets, etc., of the business, contending that it was a partnership, in which she had contributed a part of the capital and appellant the residue; while appellant took the ground that the $1,000 paid him by appellee was for a share in the profits of the business only, and that no partnership ever existed between him and appellee. Whereupon, appellee filed her bill in this cause, making the contention above mentioned, and praying that an account be taken of the assets of the partnership, and of all its dealings and transactions, from the commencement thereof, and that all other things be done necessary to wind up and finally settle the affairs of said partnership in accordance with the respective rights and interests therein of herself and the appellant.

Appellant answered the bill, making the contention as stated, that no partnership ever existed between him and appellee, other than a partnership in the profits of his "ready-to-wear"

department; that the only money wherein appellee was in any wise interested which he had at any time in his possession, was the profits of his "ready-to-wear" department, from which appellee had drawn largely; and that, on any settlement of the affairs of the said partnership in profits, appellee would be found largely indebted to him, etc.

Upon the bill, the answer, a general replication to the answer, and depositions taken and filed, both for appellant and appellee, each having testified in their own behalf, the corporation court, without passing upon the question as to when the partnership between appellant and appellee was formed, or when they commenced business, made its decree, of which appellant complains, holding that, according to the true construction of the contract between the parties, bearing date September 12, 1904, a partnership was created and existed between them; that, according to a true construction of the contract, and especially the second, fifth and ninth clauses thereof, considered together, appellee was required to contribute the sum of $1,000.00 towards the conduct of the partnership business, and the sum of $1,000 paid by her to appellant, as shown by the contract, was a payment of her share of the capital of said partnership. It was further adjudged, ordered and decreed, that the cause be referred to a master commissioner, who should take, state and settle necessary and proper accounts, to the end that the partnership affairs be finally wound up and settled.

The simple question presented is: Does the contract of September 12, 1904, create a partnership, or is it simply the written evidence of the sale and purchase of a one-half interest in the profits of an already established and going business?

It appears from the proof in the cause that appellant regarded the arrangement between him and appellee as a partnership, and so spoke of it; the correspondence between the parties in an attempted settlement out of court proceeded upon that idea; and all the facts and circumstances surrounding these parties prior to and after the contract was entered into, if more

than a reading of the contract as a whole were needed, leave no doubt that it established a partnership, and that both parties to the contract so understood it. Not that appellee was merely a partner in the profits of the business, but a partner who had contributed to the capital employed therein, and was also to contribute her services, etc., and be entitled to share in the profits of the business, and liable, as well as appellant, for losses, if any.

It is only necessary, we think, to consider some of the uncontroverted facts and circumstances which are of vital importance, to show that this is the fair and equitable construction of this contract. In the first place, appellant had, theretofore, only run his "ready-to-wear" department about four months in any one year, and it could not, therefore, be considered an established business; while the contract provided for the conduct of the business all the year round—an undertaking new not only to appellee, but to appellant.

The question naturally arises, Why should appellee have been willing to pay $1,000 for the privilege of sharing in the profits of this undertaking, when she could not know what the profits would be, if any, and when a partnership in the profits only might, by the death of either party or other cause, be terminated the next day, or, if still later, before any profits were made, whereby in either event, she would have paid appellant her $1,000 and could get back no part of it? According to appellant's view, appellee borrowed the money and put a deed of trust on her property, in order to pay him $1,000 for the privilege of sharing equally with him the profits of a business conducted on a capital of $1,000 only, of which $588.95 was old stock. Appellee had been successful in her calling, and had accumulated some property; and it is unreasonable to suppose for one moment that she, or any one else with any sort of business capacity, would have agreed to enter into a business arrangement so uninviting. On the other hand, appellee's version of the transaction is entirely reasonable, viz.: that she agreed

to contribute $1,000 to the capital to be employed in the under-
taking, also her time and services, and bear herself "the expense
of altering garments;" while appellant was to furnish a like
amount of capital, the store-room in which the business was to
be conducted, "the use of his clerks to sell the goods," all other
expenses to be borne jointly, and the profits of the business were
to be shared equally by both. If appellee was only purchasing
the right to share equally with appellant the profits of his
"ready-to-wear" department, why the provision in the contract
that he should "furnish a like amount of capital for running
said department?" And for what reason was the second para-
graph of clause 9 inserted, viz.: "That if ever the department
proves unsuccessful, and it is agreed to abolish the same, the
stock on hand shall be sold and equal division made?" If the
parties were not to contribute an equal amount of capital, it is
inconceivable that appellant would have inserted in the con-
tract (written by himself) a provision for a sale of the stock
on hand, and equal division on dissolution, as the capital went
to the purchase of the stock, and an equal division would em-
brace a division of the capital, profits and all other assets of
the partnership. He admits in his answer that stock on hand
represented "not only cash capital advanced by defendant (ap-
pellant), but accrued and undivided profits." Clearly appellee
would not be entitled to a division of the proceeds arising from
the stock on hand at dissolution, if she was only admitted as a
partner in profits. It was agreed "that at the first of each
January, stock shall be taken in the department and profits de-
termined," and if appellee only purchased an interest in profits
and was not to furnish a part of the capital to run the business,
it is again inconceivable that, when such an accounting was
had, and it was found that there were profits undivided, such
undivided profits were to be "equally credited to the accounts
of both parties, to be further used in the business."

The theory of appellant as to what was intended and under-
stood between him and appellee, when they entered into their

agreement and after, is wholly inconsistent with the provisions of their written contract.

In order that persons may be partners in the legal acceptation of the word, it is requisite that they shall share something by virtue of an agreement to that effect, and that that which they have agreed to share shall be the profit arising from some pre-determined business, engaged in for their common benefit. An agreement that something shall be attempted with a view to gain, and that the gain shall be shared by the parties to the agreement, is the grand characteristic of every partnership, and is the leading feature of nearly every definition of the term. *Jones* v. *Murphy,* 93 Va. 214, 24 S. E. 825, and authorities there cited.

It is not essential to constitute a partnership that the parties are by agreement to share in the losses of the business. It is sufficient if they are to have a community of interest in the profits as such, and where a party to the agreement is entitled to an interest in the profits, this will entitle him to an account to ascertain the result of the enterprise. *Cothran* v. *Marmaduke & Brown,* 60 Tex. 370, cited in *Jones* v. *Murphy, supra.*

It has been repeatedly held that, where the parties entered into an agreement by which the one was to furnish the capital and the other his services, the profits to be divided between them, and no special contract was made as to the losses, this constituted a partnership, and a court of equity was a proper court for either party to apply to for a settlement of the partnership accounts. *Lengle* v. *Smith,* 48 Mo. 276.

Here, appellee furnished $1,000 of the capital, her services, and paid the "expenses of altering garments," and appellant the residue of the capital employed in the business, the store-room, and paid the hire of the clerks, who sold the goods, "all other expenses being borne equally;" the undivided profits on the 1st of January of each year, during the continuance of the business, remained for further use in the business, and the parties became equal owners in the resulting profits.

It is true that a mere participation in profits does not always constitute the participant a partner; but the principles of the law of partnership lead to the conclusion that, if a trader makes an arrangement in regard to a commercial business with another, by reason of which that other becomes interested as owner in the resulting profits, while they are undivided and remain as profits, the two are partners, the general rule being, that to constitute a partnership, there must be a community of interests *inter sese,* and that the parties should share the profits and losses. *Jackson* v. *Haynie,* 106 Va. 365, 56 S. E. 148.

Had not the 8th clause of the contract before us been inserted, it would not have affected the residue of the contract, for the reason that, if an agreement be entered into by two or more parties constituting a partnership, each partner would be entitled to share in the profits, and would have also to share the losses in the business, without a provision to that effect in the agreement, as the law would impose that burden upon him. Were such a provision in the agreement necessary to constitute a partnership, the 8th clause of the contract in this case was clearly sufficient to hold appellee liable for losses, if any, in the business to be conducted under the contract.

We are of opinion that any other construction of this contract than that put upon it by the learned judge of the corporation court would be inconsistent with its terms; and that the construction contended for by appellant would be unfair, unjust and inequitable. The decree complained of is, therefore, without error, and must be affirmed.

*Affirmed.*