ESTATE OF FRANK G. ENNIS, SR., DECEASED, CARRIE MAE ENNIS, EXECUTRIX, AND NATIONAL BANK OF COMMERCE OF NORFOLK, EXECUTOR, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7008. Promulgated November 27, 1945.

*Vivian L. Page, Esq.*, and *Leslie C. Garnett, Esq.*, for the petitioners.
*Elmer L. Corbin, Esq.*, for the respondent.

---

[2] *Helvering* v. *Clifford*, 309 U. S. 331.

1098

## OPINION.

ARUNDELL, *Judge*: Respondent has included in the gross income of decedent the entire net income of the Frank G. Ennis paper business during the taxable periods in controversy, and we are here called upon to determine whether he erred in so doing. Petitioners contend that in those periods valid partnerships existed between decedent and members of his family and that the distributive shares of income were properly reported and the tax due thereon paid by the several partners individually.

The first partnership agreement, covering the years 1938 to 1941, inclusive, included the decedent, his wife, his son, Frank G. Ennis, Jr., and his daughter, Mary Louise, then a minor; and the second agreement, covering the years 1942 and 1943, included the same four and in addition decedent's son, Robert L. Ennis, then a minor.

Valid partnerships may exist between members of a family under the same circumstances and conditions as between persons unrelated; but, as has been often said, family partnerships must be subjected to especially careful scrutiny, because of the close familial relationship, in order to determine whether they are in reality what they purport to be. In the present trend of decisions it is apparent that family partnerships will not be recognized for tax purposes unless they involve contributions either of capital or of services on the part of each member. Where no services are performed and reliance is placed solely on capital contributions, increased attention and significance have been given in recent cases to the source and nature of the alleged capital contributions.

In the light of these principles, we turn to an examination of the facts and circumstances relating to the claimed partnerships in this case.

From the time Ennis first went into business for himself in 1922, Mrs. Ennis worked with and assisted him—not in the sense that an

ordinary housewife assists her husband, but as a real business associate. Both devoted practically all their time to the business, working long hours to build it up. Its success was undoubtedly due to their joint efforts, almost as much to hers as to his. What they earned they earned together. It was her money which was used to pay off the original loan of $500 borrowed to go into business. Throughout the years, except for a period of sixteen months when her youngest child was born, Mrs. Ennis worked at the office. After the execution of the first partnership agreement, she worked regular business hours every day. Her duties included selling, bookkeeping, making out statements, collecting bills, and receiving shipments of merchandise. She was authorized to sign checks on the partnership funds in the bank, and at the time of the partnership agreement she owned property of a value of at least $7,500, which was subjected to the risk of losses in the business. From time to time she made considerable advancements to the business from her savings. Indeed, since her husband's death she has been actively managing the business.

Mrs. Ennis' situation was not unlike that of the wife in *Felix Zukaitis*, 3 T. C. 814, who "had a stake in the business from the beginning" by furnishing $1,500 of the capital upon which the business was begun, and who had taken an active part in the business from its inception, working long hours at the office while her husband was out selling. We there sustained a partnership between husband and wife, even though such partnerships were not fully recognized under the laws of Michigan, the situs of the business, and held that the wife was entitled to report separately and pay the tax on her share of the profits. So here, Mrs. Ennis had a stake in the business almost from its inception, by paying off with her money the amount borrowed to go into business, and she devoted all her time to work in the office.

As for Frank, Jr., the facts are that he, too, devoted his entire efforts to the business from the time he finished school in about 1930. He was 26 or 27 years old when the first partnership agreement was entered into. For a while he worked as outside salesman and later became manager of the warehouse. During the years preceding 1938 he received a small salary. From time to time during those years his father placed additional sums to his credit on the books of the business in the way of bonuses. By 1938 such credits amounted to more than $5,000, and, though the partnership agreement did not require it, Frank, Jr., did in fact contribute that amount to capital. It appears, therefore, that not only did he make a contribution to capital, but he also rendered valuable services and took an active part in the business during all the periods in question.

Respondent stresses the fact that the partnership agreements make no conveyance by title of any interests in the several assets of the busi-

ness to the wife or any of the children and of the fact that under the terms of the agreement Frank Ennis, Sr., alone was to furnish the capital. So far as Mrs. Ennis and Frank, Jr., are concerned, we think it immaterial that the capital was furnished largely by Ennis or that the contributions to capital were unequal, for both Mrs. Ennis and Frank, Jr., furnished valuable services. As the Supreme Court said in *Meehan* v. *Valentine*, 145 U. S. 611, 623, "those persons are partners, who contribute *either property or services* to carry on a joint business for their common benefit, and who own and share the profits thereof in certain proportions." (Italics ours.) There may be a perfectly valid partnership between one partner who contributes all the capital and another who contributes nothing but services. *Miller & Co.* v. *Simpson*, 107 Va. 476; 59 S. E. 378. In such a partnership, in the absence of a contrary agreement, the partner contributing capital would, upon dissolution and liquidation, be entitled first to a return of his capital, and the two would share equally in the remaining proceeds. Virginia Code of 1936 Ann., §§ 4359 (18), (40). See also *W. H. Simmons*, 22 B. T. A. 1106, in which we said that where two new members of a partnership had rendered services, it was of no importance that the other partners had given them no interest in the accumulated profits or in the property used in the business because there "may be a partnership in which one partner is the sole owner of the property and the firm capital may consist merely of the right to use property contributed by and belonging to one member."

The partnership agreement before us provided for the sharing of profits and losses, for the contribution of capital by Ennis, and for the performance of services by the others. Mrs. Ennis and Frank, Jr., did render services, as has been stated, and Frank, Jr., also made a contribution to capital at the time the agreement was executed.

In view of all the circumstances recited, we have little hesitancy in holding that during the taxable periods involved Mrs. Ennis and Frank, Jr., were bona fide partners in the business. A fundamental principle of income taxation, often referred to in family partnership and other similar cases, including *Lucas* v. *Earl*, 281 U. S. 111; *Burnet* v. *Leininger*, 285 U. S. 136, and others cited by respondent, is the taxation of income to him who earns it or to him whose property earns it. It may fairly be said in the instant case that the success and the earnings of the business were attributable in large part to the joint efforts of Ennis and Mrs. Ennis and Frank, Jr., and we are therefore but applying the stated principle in holding that Mrs. Ennis and Frank, Jr., were entitled to report separately and pay the tax due on their respective shares of the profits.

We have almost as little hesitancy in holding that the minors, Mary Louise, and Robert L. Ennis, were not bona fide partners. Petitioners must rest their case for sustaining the partnership or

partnerships as to these two on contributions to capital, since admittedly neither performed any services for the business. During the years in controversy Mary Louise worked at a book shop, called the Atlantic Book Store, which was owned by her father individually and not by the partnership. The bookkeeper for the partnership testified that she did no work in his office, except for one day, but that she spent her time at the book store looking out for her father's interest. Petitioners point out that at the beginning of the first taxable year in controversy there had been credited to Mary Louise's capital account on the books her share of two years' earnings. They argue, therefore, that she had "capital" amounting to $4,595.80, which she contributed by leaving it in the business. All this money, however, consisted simply of shares of business income. It was not money which she earned or helped to earn, as in the case of the $5,000 odd contributed by Frank, Jr., at the outset, because admittedly she did no work for the business. As to Robert L. Ennis, petitioners point out that the second partnership agreement provided that he should contribute $2,000; that that sum was actually paid in; and that at the end of 1942, after the year's earnings had been credited, Robert had "capital" amounting to $11,848.06, which he contributed by leaving it at risk in the business. The $2,000 was apparently paid in by Mrs. Ennis from funds which she controlled, and no guardian was appointed to represent Robert's interest. As for the remainder of the $11,000, consisting of a year's share of business income, the same is true with respect to Robert as with respect to Mary Louise, since he likewise rendered no services. We conclude that neither made a capital contribution within the meaning of the rule requiring contribution of capital or of services, and that during the taxable periods involved these two were not carrying on business in partnership with the others.

In view of our conclusion with respect to Mrs. Ennis and Frank, Jr., a recomputation of the income tax liability of decedent will be required. The Commissioner has included in decedent's gross income the shares reported by all the members of his family. We hold only that he erred in including the shares which were reported and on which the tax was paid by Mrs. Ennis and Frank, Jr., and that those shares should be excluded in the recomputation.

*Decision will be entered under Rule 50.*