William O. Culbertson, Sr. v. Commissioner. Gladys Culbertson v. Commissioner.
Culbertson v. Commissioner
Docket Nos. 4184, 4185.
United States Tax Court
1947 Tax Ct. Memo LEXIS 173; 6 T.C.M. (CCH) 692; T.C.M. (RIA) 47168; June 24, 1947
*173 Benjamin L. Bird, Esq., and Y. D. Harrison, Jr., Esq., 607 First Nat. Bank Bldg., Fort Worth, Texas, for the petitioners. J. Marvin Kelley, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: These cases, consolidated for hearing and disposition, involve deficiencies in income tax as follows: Income
Docket
tax deficiencies
Petitioner
No.
1940
1941
William O. Culbertson
4184
$554.98
$9,164.34
Gladys Culbertson
4185
437.02
8,756.34 The issues to be determined are: (1) Was the business enterprise, W. O. Culbertson and Sons, operated as a partnership, for income tax purposes, composed of petitioner and his four sons? (2) In the alternative, if no valid partnership existed, were the petitioners taxable on one-half and each of the sons taxable on one-eighth of the income arising from the business enterprise of W. O. Culbertson and Sons by virtue of their alleged ownership of the assets of the business? From evidence both documentary and oral, we make the following Findings of Fact The petitioners, William O. Culbertson and his wife, Gladys Culbertson, reside at Dalhart, Dallam County, *174 Texas. Their income tax return for the years 1940 and 1941 were filed with the collector of internal revenue for the second collection district of Texas, at Dallas, Texas. Since the transactions involved in this proceeding pertain particularly to William O. Culbertson, the husband, he will hereafter be referred to as petitioner. Five children, four sons and one daughter, were born to petitioner and his wife, all of whom are now living. They are W. O., Jr., Richard, Joe Jack, Eugene and Fannie. On January 1, 1940, at the beginning of the first taxable year herein involved, they were 24, 22, 18, 16 and 14 years of age, respectively. Richard was married in the spring of 1940, and W. O., Jr., was married in December 1940. From about 1915 to October 1939 petitioner and R. S. Coon were engaged in the cattle and ranching business as a partnership under the firm name of Coon and Culbertson. They bred and produced pure bred, registered Hereford cattle. Since the Culbertson boys were about 12 years of age they have done odd jobs on the ranch during the summer vacations and sometimes on week-ends, such as riding, looking after cattle, tatooing calves, taking care of breeding records, etc. *175 W. O., Jr., finished high school in 1933 and worked on the ranch until the fall of 1934, when he entered Texas A. & M. College, and took a course in animal husbandry. During the next four years he worked on the ranch between school terms, about three months each summer. He finished Texas A. & M. College in May 1938 and became foreman of the ranch for Coon and Culbertson, and continued in that capacity until the dissolution of that partnership in the fall of 1939. For his services as foreman he $100received per month and board. During the time W. O., Jr., served as foreman for Coon and Culbertson, the only purchase he made for the organization was one bull, and he has made no purchases for the organization of W. O. Culbertson and Sons. During the spring of 1939, due to the age and health of Mr. Coon, it was determined to liquidate the herd and dissolve the partnership. Coon and Culbertson while liquidating their business sold about 350 head of Brafords (a cross between Brahma and Hereford cattle) to the four Culbertson boys. Before the transaction was completed, a former customer of Coon and Culbertson, and a good friend of all parties, attempted to buy the Brafords from R. S. Coon. *176 At the suggestion of Coon the sale was changed from one to the Culbertson boys to the former customer, by an additional payment by him to the boys of about $5 per head profit. By October 1939, the herd had been reduced to approximately 1,500 registered cattle. About that time petitioner offered to purchase the remainder of the herd at a price "around $65 per head." Petitioner's offer was accepted by Mr. Coon, provided petitioner would sell his four sons an undivided one-half interest in the herd at the same price. Petitioner advised Coon that he would see the boys about the matter. Soon thereafter petitioner went to the ranch, which was at Beuyeros, New Mexico, 93 miles from Dalhart. There he saw W. O., Jr., and talked to him about the "deal." W. O., Jr., was enthusiastic about the matter. He later talked to Joe Jack and Eugene, and "they thought it was mighty nice they could buy the cattle at the price." Richard was at Texas A. & M. College at that time. Petitioner offered to finance the purchase of the undivided one-half interest for the boys. On November 4, 1939, Coon and Culbertson executed a bill of sale to petitioner covering the cattle then owned by that partnership, and petitioner *177 gave his check to Coon and Culbertson in payment therefor in the amount of $99,440. Two days later, on November 6, 1939, petitioner and his wife, Gladys, executed a bill of sale to W. O., Jr., Richard, Joe Jack and Eugene covering an undivided one-half interest in the same cattle which petitioner had purchased on November 4. The bill of sale was handed to W. O., Jr., who gave it to the bookkeeper and "told him to file it." The next day the boys gave a note to the petitioner for $49,720, at 4 per cent interest, due one year from date, for the one-half undivided interest in the cattle described in the bill of sale. The partnership of Coon and Culbertson owned some other properties, including a few head of cattle, grass leases, saddle horses and odds and ends, that were not conveyed to the petitioner or his sons in the foregoing transaction. A new note dated January 1, 1940, in the amount of $57,674.80, at 4 per cent interest, due one year from date, executed by the four sons and payable to petitioner and his wife, was given to them to cover the additional properties mentioned in this paragraph. Soon thereafter, however, Coon and Culbertson sold the additional cattle covered by the *178 note of January 1, 1940, and that note was credited with $5,930. This credit, along with others appears on the back of the note, as follows: Credit
of January 1940 overcharge on orig-
inal note
$ 5,930.00
Balance due on note
$51,744.80
CREDIT
Dec. 30/1940 gift as shown on WOC
1940 income report and ledger ac-
count
4,000.00
Balance due on note
$47,744.80
Credit June 10th/41
30,000.00
Balance due on the above note as of
June 10th/41
$17,744.80
CREDIT
June 10th/1941 GIFT
17,744.80
PAID in full as of June 10th/1941
A local Dalhart paper, under date of December 2, 1939, quoting "Culbertson," announced the fact of the dissolution of the Coon and Culbertson partnership and that the business would be operated by Culbertson and his boys under the name of Culbertson and Sons. A bank account was opened in the name of W. O. Culbertson and Sons - upon which petitioner, his four sons and bookkeeper could check; however, most of the checks were signed by the bookkeeper, Mr. Williams. On November 13, 1939, the Coon and Culbertson membership in the American Hereford Association, at Kansas City - the Central United States Registry for all registered Hereford cattle *179 - was changed to W. O. Culbertson and Sons and a certificate issued. Neither newspaper article nor stock certificate called Culbertson and Sons a partnership. On December 31, 1940, petition inventoried the cattle involved herein at an average price of $60 per head. After the formation of the organization, W. O. Culbertson and Sons, W. O., Jr., continued his work as foreman of the ranch under the same arrangements as previously existed under Coon and Culbertson. W. H. Coon, (R. S. Coon's nephew, attorney-in-fact and manager of R. S. Coon's Panhandle interests) on or about November 23, 1939, wrote to A. A. Wright, manager of the National Finance Credit Corporation, Fort Worth, Texas, in part as follows: "Mr. W. O. Culbertson and Sons will take over the Coon & Culbertson herd November 1st, 1939. Mr. R. S. Coon is selling his interest in the cattle to this new firm - W. O. Culbertson and Sons. "Mr. Culbertson would like to establish a credit with the National Finance Corporation and if this is agreeable with you we would like to have the herd inspected on the 29th of this month. We will tally the cattle over to Mr. Culbertson at the same time your representative inspects the *180 cattle. * * *" Sometime after the date of the above letter petitioner talked to A. A. Wright about borrowing funds for W. O. Culbertson and Sons and explained that there were minors involved. Upon learning that two of the sons were minors, Wright advised petitioner to have prepared some kind of document whereby he could qualify authorizing him to sign for the minors. Following this advice petitioner called on his attorney and explained to him the "Partnership" in detail and instructed him to prepare a document whereby he could sign mortgages and borrow money, a document their (the finance Co.) attorney would accept. Pursuant thereto the attorney prepared a document which was read and understood by petitioner. In essential part it reads: "WHEREAS, the undersigned, W. O. Culbertson and Gladys Culbertson, husband and wife, are the owners of certain live stock, land leases and ranch equipments and supplies, located in Harding County, New Mexico, and, "Desiring to make provisions for the welfare of our sons, W. O. Culbertson, Jr., Richard Culbertson, Joe Jack Culbertson and Eugene Culbertson, and desiring to establish them in business, as and when they arrive at a proper age to engage *181 in business; and, further, desiring to induce our said sons after they reach such state of maturity, to contribute their time and services, in building up and establishing a common family estate, and desiring to suitably reward them for their assistance to us in so doing, and in order to establish with them a limited partnership in a ranching enterprise to be hereafter known as W. O. Culbertson & Sons; "Therefore, Know All Men by These Presents, That we, W. O. Culbertson and Gladys Culbertson, for and in consideration of the sum of Ten Dollars to us paid, and other good and valuable consideration, do hereby and by these presents sell and convey unto W. O. Culbertson, Jr., Richard Culbertson, Joe Jack Culbertson and Eugene Culbertson, and to each, an undivided one-eighth interest, in and to the following described property, towit; "[Followed by a description of the property as in the bills of sale heretofore considered.] "This conveyance is made subject to the following conditions and stipulations, to wit; "I. The grantors, W. O. Culbertson and Gladys Culbertson, reserve to themselves, the sole and exclusive right and control and management of such properties herein conveyed, *182 with increases thereof, until the time that the youngest of our said sons living shall have arrived at the age of twenty-one years; including the right of sale, or exchange of said property or any part thereof, and the right to purchase or lease lands for the use of the ranch enterprise, either out of earnings or of sales of property on hand; the right to purchase additional livestock; the right to borrow money on the credit of part or all of the property belonging to the ranch, and to pledge the property for security for such money so borrowed; the right to increase by purchase, or to diminish by sale, the livestock on said ranch; to sell any equipment or supplies now belonging to the ranch or to purchase other equipment and supplies; to invest the money derived from sales or from earnings of the ranch as they may deem proper; in fact, to manage and control the property herein conveyed, without restrictions and in such manner as may by them be deemed proper, until the youngest surviving son shall have arrived at the age of twenty-one years; and until such time, it shall not be necessary to obtain the verbal or written consent of either of said sons, or of any instrument in writing *183 from either of said sons, to any transaction desired to be done in the premises, by the grantors herein. "2. It is specifically made a condition of this conveyance, that should there be at any time before the youngest surviving son shall have arrived at the age of twenty-one years, any losses sustained in the operation of such ranch, or other enterprises [enterprise] involved, then the grantors, nor either of them, shall become personally liable to the grantees herein, or to either of them, for any part of such losses, but such losses, if any, shall be bourne [enterprise] by such ranch interprise, [enterprise] and not by any individual owner of any interest therein. "3. It is further made a condition of this conveyance, that neither of our said sons, shall have the right of withdrawal of any part of his interest in such ranch interprise, [enterprise] or of sale of same, until the youngest surviving son shall have reached the age of twenty-one years, but at such time either one, or all of such sons, shall have the right of withdrawal from such partnership, and shall be entitled to receive his interest therein, but his interest shall be equal to an undivided one-eighth in *184 value, or property in kind, after all liabilities, if any, of such ranch or other interprise [enterprise] has been liquidated. "4. In the event of the death of either of our said sons, prior to such time that the youngest surviving son shall have reached the age of twenty-one years, such deceased son leaving no surviving wife or child or children born in lawful wedlock, then such interest of such deceased son shall vest in his father and mother and surviving brothers and sister, or the surving [surviving] ones, according to the rule of descent and distribution prevailing in Texas. In the event of the death of either of our said sons, before the youngest of our surviving sons shall have reached the age of twenty one years, such deceased son leaving surviving him, a wife or child or children born in lawful wedlock, then such share of such deceased son shall go to and vest in such surviving wife and child or children born in lawful wedlock, according to the law of descent and distribution prevailing in Texas. "5. In the event of the death of grantor, Gladys Culbertson, prior to the time that our youngest surviving son reaches the age of twenty-one years, leaving surviving her, *185 grantor W. O. Culbertson, then the exclusive control and management of said properties, as provided in paragraph No. 1 hereof, shall vest in said W. O. Culbertson alone. In the event of the death of said W. O. Culbertson, prior to the time the youngest surviving son shall have reached the age of twenty one years, and said Gladys Culbertson then still being alive, the joint management of said properties, as provided in said paragraph 1 herein, shall vest in said Gladys Culbertson and the oldest surviving son. In the event of the death of both W. O. Culbertson and Gladys Culbertson before the surviving youngest son shall reach the age of twenty-one years, then the right of management and control, as provided in paragraph No. 1 hereof, shall vest in the two oldest surviving sons. * * *
"In Testimony whereof, witness our hand, at Dalhart, Texas, this, the 8th day of December, A.D. 1939, but to become effective on the 1st day of January, A.D. 1940." After which followed petitioner's and his wife's signatures and a notary public's affidavit to the effect that the instrument was executed "for the purpose and consideration therein expressed." The foregoing document was executed *186 by petitioner without inquiring of his four sons as to whether they would agree to it. W. O., Jr., was not advised of the document until sometime after May 1943. Later, during 1940, petitioner and his wife, Gladys, executed a document concerning their daughter, Fannie. The document reads, in part, as follows: "WHEREAS, on the 8th day of December, 1939, W. O. Culbertson, and wife, Gladys Culbertson, executed a certain trust instrument, by the terms of which a limited partnership was created between themselves and their sons, W. O. Culbertson, Jr., Richard Culbertson, Joe Jack Culbertson and Eugene Culbertson, and by the terms of which a conditional conveyance was made to each of said sons of an undivided one-eighth interest in and to certain properties described in said trust instrument, and the Grantors therein retained to themselves an undivided one-half interest in and to the property so described, a true copy of such trust instrument being hereto attached, marked Exhibit A, and made a part of this instrument in so far as necessary to reflect the tenor and effect of this conveyance now about to be executed by the said W. O. Culbertson and Glayds Culbertson, and; "WHEREAS, said *187 trust instrument, and the partnership thereby created, is now in full force and effect, and; "WHEREAS, the said W. C. Culbertson and wife, Gladys Culbertson, now desire to make conveyance to their minor daughter, Fannie Culbertson, a like conveyance of an interest in such partnership, equal to the interest conveyed to each of said sons; "NOW, THEREFORE, we, W. O. Culbertson and wife, Gladys Culbertson, for an in consideration of the sum of Ten Dollars ($10.00) paid, and for other good and valuable consideration, do hereby and by these presents grant, sell and convey unto the said Fannie Culbertson an undivided one-eighth interest in and to all the property now owned and held by the co-partnership of W. O. Culbertson and Sons, wherever such property may be now located, and being an undivided one-forth part of the partnership interests now owned and held by said W. O. Culbertson and Gladys Culbertson, but this conveyance of such interests is made subject to all the terms and conditions of the said trust instrument, dated 8th day of December, 1939, a copy of which being hereto attached and made a part hereof. "IN TESTIMONY WHEREOF, WITNESS OUR HANDS AT DALHART, TEXAS, this 31st *188 day of December, 1940" The document was signed and executed before a notary public in a similar manner to the aforementioned document. At about the same time Fannie gave a note to petitioner in the amount of $13,488.27 covering the purchase of the above-mentioner one-eighth interest. The note was satisfied by a credit of the full amount through a gift to her from petitioner. On or before June 10, 1941, W. O. Culbertson and Sons borrowed $60,000 from the National Finance Credit Corporation which was "turned over" to petitioner. Half of the amount represented the credit of $30,000 appearing on the back of the note given by the boys to petitioner and his wife, dated January 1, 1940. The boys did not sign anything in connection with this loan. It was handled by petitioner. The loan was repaid with proceeds from the ranch. A partnership return of income for W. O. Culbertson and Sons for the year 1940 was filed with the collector of internal revenue on March 10, 1941. The return was sworn to by the petitioner. In the return it is stated that the partnership was organized on January 1, 1940. Attached to the return are certain schedules which were prepared on letterheads of W. O. Culbertson *189 and Sons. In the upper left hand corner appears the name of W. O. Culbertson, while in the upper right hand corner appears the names of the four sons. The return contained the following information in Schedule "J": 1. Name and address of each
2. Ordinary net
partner * * *.
income * * *.
W. O. Culbertson, Dalhart, Tex.
$ 8,901.09
W. O. Culbertson, Jr., Bueyeros,
N. Mex.
3,425.28
Richard R. Culbertson, Dalhart,
Tex.
2,287.28
Joe Jack Culbertson, Dalhart, Tex.
2,225.28
Eugene Culbertson, Dalhart, Tex.
2,225.28
Totals
$19,064.21
The return also contained the following information, on page 1: Gross receipts from business or pro-
fession
$29,237.17
Merchandise bought for sale
4,665.55
A similar return was filed for W. O. Culbertson and Sons for the year 1941. In that return were certain schedules prepared on letterheads of W. O. Culbertson and Sons. In the upper right hand corner thereof were the names of the petitioner, his wife, Gladys Culbertson, and their five children. Directly underneath was the statement: "All equal owners in W. O. Culbertson and Sons." The return contained the following information in schedule "J". 1. Name and address of each
2. Ordinary net
partner * * *.
income * * *.
Miss Fannie Culbertson
$ 7,825.17
Richard R. Culbertson
7,825.17
Joe Jack Culbertson
7,825.17
Eugene Culbertson
7,825.17
W. O. Culbertson, Jr.
9,025.17
W. O. Culbertson, Sr.
23,475.48
Totals
$63,801.33
*190 The return also contained the following information on page 1: Gross receipts from business or profession - $198,884.85; merchandise bought for sale - $172,829.02. It was stated on page 4 that the partnership was organized on January 1, 1941. On a letterhead used by W. O. Culbertson and Sons in April 1946 there appears in the upper right hand corner thereof the names of W. O. Culbertson, Sr., and Gladys Culbertson and the five Culbertson children. Directly underneath the names is this statement: "All one-sixth owners in W. O. Culbertson and Sons." Richard, Joe Jack and Eugene finished high school. Richard finished Texas A. & M. College in May 1940 and went directly into the Army. Joe Jack attended Texas A. & M. College but before graduation "he had to drop out due to the war." At the time of the hearing of this case, he had gone back to finish the last term. Eugene, at the time of the hearing of this case, was attending a business college at Amarillo. W. O., Jr., is the only son who was rendering any kind of services or taking any part in the ranch operations at the time of this hearing. Fannie helps operate a dry goods store in Dalhart, Texas, which is operated "in conjunction *191 with our cattle business." No accounts for the store are set up on the books of W. O. Culbertson and Sons. Richard, Joe Jack and Eugene were paid wages for their services during the summer months. During the taxable years petitioner looked after the office in Dalhart. There he contacted buyers, handled contracts, made purchases and sales of cattle, and looked after the "borrowing of money" and the general business of the office. Petitioner was at the ranch frequently during the taxable years, an average of a little more than once each month. Petitioner did not receive any salary for his services. The books for the organization W. O. Culbertson and Sons were set up October or November 1939. There are no accounts set up in the books showing who owned the business nor the ownership of any individual in the alleged partnership. Sometime in 1943, after a revenue agent had questioned the validity of the partnership of W. O. Culbertson and Sons, petitioner went to Fort Worth and discussed the matter with the manager of the National Finance Credit Corporation, who suggested he contact an accountant. The accountant was employed in the matter by petitioner and he advised petitioner to *192 institute court proceedings to determine whether the partnership was valid. Sometime after May 1943 petitioner wrote a letter to W. O., Jr., advising him, for the first time, about the existence of the document dated December 8, 1939, and it was decided to institute proceedings in the District Court of Dallam County concerning the validity of the partnership and the document executed by petitioner and his wife on December 8, 1939. Petitioner employed an attorney. A petitioner was filed in the name of the five children of petitioner on February 23, 1944, and on February 26, 1944, the petitioner and his wife, who were named as defendants, filed their answer. The petitioner was the only person present at the hearing, except his attorney and the court officials. The petitioner there testified, in part: "I followed Mr. Wright's request, - to get something in the form of a partnership so he could carry me, so he could carry my finances with him"; also that the document of December 8 was executed following Mr. Wright's suggestion. Upon the evidence submitted, the court entered its decree that the document of December 8, 1939, was void and that the partnership was in all things valid. The *193 essentials of fine Hereford breeding involves three phases. One is feed and care and an understanding of type of feed, for certain ages and classes of animals. Constant care is required, and it is essential to have proper brood blood lines; also to maintain those lines and to understand outcrops and the types of breeding desired. Opinion The questions presented to us here are whether the business organization of W. O. Culbertson and Sons constitutes a partnership for Federal income tax purposes, or, in the alternative, whether the income from the business should be taxed in accordance with the alleged ownership of the assets of the business. The respondent denies both the principal and the alternative contentions. In support of his first contention petitioner argues that "This is not a case where a father has control of a business prior to the creation of a partnership with relatives, and the same control and dominion after the partnership was created"; further, that "The only way that any of the Culbertsons acquired Coon's one-half [interest] was by virtue of the formation of this partnership." He claims that three things are clear, and upon these he primarily bases his *194 case. They are: "(1) The Culbertson boys really acquired their one-half interest from R. S. Coon. "(2) R. S. Coon, and not petitioner, originated the conveyance of an undivided one-half interest in the cattle to the Culbertson boys and the formation of W. O. Culbertson and Sons. "(3) An indeterminate part of the value of the cattle the boys contributed to W. O. Culbertson and Sons originated with them in the first instance - the difference between the actual value and the sales price of the cattle included in the bills of sale - for the boys were quite clearly third party beneficiaries of the Coon-petitioner contract." Respondent, on the other hand, argues that the case is to be decided by the principles announced in Commissioner v. Tower, 327 U.S. 280, and Lusthaus v. Commissioner, 327 U.S. 293. He contends that the sons have not met any of the requirements announced therein. The portion alluded to in the Tower case is as follows: "There can be no question that a wife and a husband may, under certain circumstances, become partners for tax, as for other, purposes. If she either invests capital originating with her or substantially contributes to *195 the control and management of the business or otherwise performs vital additional services, or does all of these things, she may be a partner as contemplated by 26 U.S.C., §§ 181, 182. The Tax Court has recognized that under such circumstances the income belongs to the wife. A wife may become a general or a limited partner with her husband. But when she does not share in the management and control of the business, contributes no vital additional service, and where the husband purports in some way to have given her a partnership interest, the Tax Court may properly take these circumstances into consideration in determining whether the partnership is real within the meaning of the Federal revenue laws." Our first consideration is to examine the business transactions to determine whether, within the language of the Tower case, the Culbertson boys actually invested any capital in the alleged partnership. In this respect petitioner argues that the boys did, in fact, buy their interest from Coon. With this theory we can not agree. W. O. Culbertson testified that he told Wright that Coon sold to W. O. Culbertson and Sons - not to the boys, and Coon's nephew, writing *196 to Wright about November 23, said Coon was selling to W. O. Culbertson and Sons. According to the evidence placed before us there was a definite sale and bill of sale from the partnership of Coon and Culbertson to petitioner covering the assets that later formed the nucleus of the business known as W. O. Culbertson and Sons. At a later date, a bill of sale indicated a sale of half that interest to the boys and the boys gave to petitioner and his wife a note that called for payment within one year. Thus it is seen that in fact the boys did secure their interests from their father. However, even if, as urged by the petitioner, we consider the father a conduct between the boys and R. S. Coon in the purchase of the cattle, the result here is, in our view, not different. If the father did not furnish the cattle themselves, he furnished the money to obtain them, paying Coon for them, conveying them to the sons as to a half interest, and taking his sons' notes. (The fact that R. S. Coon inquired about the boys' finances and, though it is not shown, might have financed them, is immaterial. He did not do so, and their father did) The sons furnished no capital at that time, and were put into *197 the alleged partnership with their father's contribution. This, taken with the later facts that to the extent of about $21,000 their notes were given back to them, and the business itself, not they, paid off the other $30,000, makes it clear that the sons made no capital contribution, within the sense of the Tower case. There is no essential difference, under all the facts here, between a gift of a capital contribution by a father or husband in the beginning, and the gift of it later when the father forgives the notes, particularly in the light of the father's testimony, relative to whether he felt the boys would be able to pay in the one year specified in the note. "I never - I didn't give it too much thought." We think he did not expect or intend them to pay it. Moreover, the conveyance of the cattle, without other consideration than the notes, later forgiven, except as paid by the business, is seen as so completely a part of the formation of the alleged partnership as to constitute an incompleted gift, as considered in the Tower case, so as to place in the hands of the sons no capital contributable by them to the partnership. The gifts made by petitioner are within the language *198 of the Tower case and therefore do not establish a basis for capital contribution sufficient to establish an interest in the alleged partnership. Neither does the payment of the $30,000 out of the proceeds of the business come within the language of "capital originating with her [the alleged partner]." The Lusthaus case is in point here, in that in that case there was a series of notes signed and payment made out of the business, but it was not sufficient to establish a basis for invested capital. We can ascribe no weight to the petitioner's contention that an indeterminate part of the value of the capital - difference between actual value and price paid - came from Coon to the sons and was contributed by the partnership to them in the light of the evidence that the father inventoried the cattle, as of December 31, 1940, at $60 a head, whereas the purchase price was about $65 a head. There is nothing in the record convincing that the purchaser was really getting the cattle at a bargain price, and even if there was, nothing from which we could soundly regard the bargain as a gift from Coon to the boys. We consider next whether the sons contributed such services as, under the Tower *199 case and others to the same effect, would justify recognition of a partnership. As to the three younger sons, it is clear, we think, that there was no such service contribution. Though we have no doubt that the boys assisted in a laudable filial spirit on the ranch, we discern nothing constituting what we think is a requisite contribution to a real partnership. They appear to have done no more after the alleged partnership than before. W. O., Jr., is in a different position in that he was older and was earning a salary as foreman of the ranch, but that fact only serves to refute a contribution of such service by him as would support a partnership. He was paid both before and after formation of the alleged partnership, at about the same rate for about the same services. We see none contributed to the partnership. We think in general that services do not greatly affect this case. We find no son adding "vital additional service" which would take the place of capital contributed because of formation of a partnership. In addition to the above inquiry as to the presence of those elements deemed by the Tower case essential to partnerships recognizable for Federal tax purposes, other facts *200 in our opinion compel a conclusion that there is not here presented such partnership. Looking at all of the facts, we can not give to the bill of sale made to the boys on November 4, the weight urged by the petitioner, as against the document of December 8. Though W. O., Jr., at least did not know of the latter document for a long time (nothing definite indicates whether the other boys did or not), we can not regard that fact so important as urged. The father, asked about his failure to disclose that document, testified that "I didn't think they'd be concerned in it," also that he "didn't think so," when asked if he did not think the boys would be interested in knowing about the line of credit to establish which he said he drew up the document of December 8. We think that is right - that this was a family matter (requiring close scrutiny), so managed by the father that the sons were not concerned as to the form it took, or in the way their father handled it, for they would be treated right by their parents. This is indicated, we think, by the two other cattle deals in which the sons were interested - as to the Brafords where their purchase was, in effect, disregarded, when another *201 wanted to buy what they had bought, and as to the extra cattle which were taken over about January 1, 1940, but were later sold by Coon and Culbertson, not by Culbertson and Sons. These purchases by the sons were just as real, it seems to us, as that of the herd on November 4, yet the sons at least permitted their elders to dispose of the Brafords and the extra cattle. Though the publicity given to "Culbertson and Sons" by newspaper and the change of the American Hereford Association stock to Culbertson and Sons do indicate that in November the boys were considered in connection with the cattle business, the whole record before us fails to convince that there was a partnership from that time, in the face of the instrument of December 8 by the father and mother. Neither the newspaper article nor the stock certificate in American Hereford Association calls Culbertson and Sons a partnership. The newspaper article referred to "Culbertson and Sons, the name under which Culbertson and his sons will operate" - Quoting Culbertson. The instrument of December 8, 1939, if here given effect, precludes the idea of a partnership, and is not relied upon by the petitioner here, but was, at his instance, *202 set aside by a local court. [The decree is clearly collusive and without effect here. Freuler v. Helvering, 291 U.S. 35; Francis Doll, 2 T.C. 276; affd., 149 Fed. (2d) 239; cert. denied 326 U.S. 725; Erik Krag, 8 T.C. 1091 (No. 123, promulgated May 16, 1947). Though urged, in effect, that it can not stand against the bill of sale of November 4, we think the reasons given are insufficient, and that it should be here given effect. The question of fact here is: When and by what instrument or agreement was the association between parents and sons in the cattle business effected? The petitioner says the bill of sale of November 4 was the basis for an oial agreement of partnership about that time. Yet, he solemnly represented to the finance company that on December 8 he and wife were the owners of the same cattle described in the bill of sale, and that he was then making a conditional conveyance to them, and therein he retained, inter alia, such broad powers as to preclude consideration of the status created as partnership. We can not believe, as contended in effect, that the finance company knowing of the bill of sale to *203 the sons, nevertheless lent large sums of money without the sons' signatures. Had the finance company's attorney been apprised of the bill of sale, it is inconceivable that he would have approved loans on the cattle without the signatures of the sons. If the bill of sale were considered effective, no one but the sons could authorize the father to borrow on the cattle. He could not himself give himself authority. From this we believe not only that the finance company was not informed of any transfer of cattle to the boys (though informed in general of a "partnership," there is no evidence that Wright was then told of the bill of sale), but also that the father, in executing the instrument of December 8, did not consider the bill of sale effective. We do not think he intentionally misrepresented to the finance company that he was the owner, but that he, with good reason, considered himself such, and considered, as did the finance company, that the effective transfer was that of December 8. His testimony before the Texas court was that Wright required the partnership agreement to be reduced to writing. We think they both considered the "partnership" was formed December 8. This is in accord *204 with the income tax return for 1940, stating that the partnership started on January 1, 1940 - as the document of December 8 had provided. Also, the letterhead used in making up the return for 1941 including Fannine Culbertson as one of the "equal owners" in W. O. Culbertson and Sons, indicates to us that the father was dividing up the family holdings at his will. Such action is not consistent on the record before us, with rights vested in the boys, or so considered by them. Moreover, the bill of sale to the boys, if of any effect, was, in our view, a gift, similar to gifts of "partnership" capital in various cases. It does not, moreover, prove a partnership. The partnership relied upon must rely, under the petitioner's theory that it originated about November 4, on mere oral conversations, not shown to have been participated in by all parties concerned. We think that, as required by the finance company, this "partnership" was put in writing later - on December 8, but subject to such conditions that it does not constitute such for Federal income tax purposes. That instrument recognized expressly that provision was to be made for the boys to establish them in business "as and when they *205 arrive at a proper age to engage in business" - and to induce them "after they reach such state of maturity to contribute their time and services." This is in sharp contrast with the present contention of a then pre-existing partnership. We are not impressed with the idea that W. O. Culbertson did not intend the language of that instrument. He intended to borrow money by means of it. It was read to him and he understood it. We think it represented the facts. We also think it is important that W. O. Culbertson and Sons did not carry capital accounts for the alleged partners on the books, and that the amounts of any withdrawals or financial participation by the sons are not shown to any appreciable extent. In this respect the instruments, signed by petitioner and his wife, dated December 8, 1939, and December 31, 1940, take on added significance. By these instruments it appears that the boys (and daughter) are to acquire an interest in the business in the future, and we can not pass them off lightly, as does petitioner on brief. Moreover, the fact that at the time of trial the boys were not, with the exception of W. O., Jr. (and perhaps Richard - "Richard has some lately"), taking *206 part in the operation of the ranch, is hardly consistent with the petitioner's contention or the idea that Coon thought Culbertson could not operate the business. Though the petitioner urges that many cattle businesses are composed of fathers and sons, and that the nature of the industry so requires, we think the same is probably equally true of other industries where men wish to take children into business with them. Nevertheless, we think that fact does not override the many decisions to the general effect that partners must contribute capital originating with them, or vital services. See Scherf v. Commissioner, 161 Fed. (2d) 495 (May 16, 1947), where it is held that (though adult) "neither of the sons furnished or expected to furnish to the business any new capital or skill, or any new or substantial service" - a statement very applicable here, to a different industry and facts. Again, applying a statement from Wilson v. Commissioner, 161 Fed. (2d) 556 (May 1, 1947), we think here "The conduct, control and management of the partnership business went on just as it did before the transfer." The father continued very largely to manage the finances, sales *207 and purchases, W. O., Jr., continued to work on a salary as before, and the other boys contributed nothing of substance to the business. Considering the treatment accorded the alleged partnership claimed formed on November 4, 1939, by the father, the fact of family relationship, and the borrowing of funds upon the later instrument, and all of the facts before us, we are of the opinion and hold that the alleged oral partnership did not constitute the parties partners for Federal income tax purposes. Petitioner argues in the alternative that if the partnership of W. O. Culbertson and Sons is not recognized for tax purposes, the income from the cattle should be taxed to the owners thereof according to their interest. In support of his argument, he relies on Erancis A. Parker, 6 T.C. 979; Felix Zukaitis, 3 T.C. 814; Estate of Frank G. Ennis, Sr., 5 T.C. 1103; Montgomery v. Thomas, (C.C.A. 5) 146 Fed. (2d) 76. It is true that each of these cases holds that the income was to be taxed in proportion to the ownership in the different organizations, but in each case it was first decided that there was a bona fide partnership and only because *208 of that fact was the income taxed to the respective partners. The above cases involve income from a business. Warren MacPherson, 19 B.T.A. 651, also cited, does not, in our opinion, support petitioner's view, for therein we think it clear there was partnership for Federal tax purposes. Another case relied on by petitioner is Allen, Collector v. Beazley, (C.C.A. 5) 157 Fed. (2d) 970, involving income from the holding of securities. In the Beazley case, the securities were taken in the name of the taxpayer only, and it was contended that the income therefrom was taxable equally between the family members because of their respective ownership in the securities. This case is distinguishable from the instant case in that it is based on its particular facts, that of holding property (securities) and distributing the income to the owners thereof, while the instant case is one which deals with the distributing of income of a business. There has been no showing in the instant case that the income is the result of mere holding the cattle (or property) but rather it appears that the ranching business involves a much more involved process than that in the Beazley case. *209 We have considered this identical question in such cases as Albert Nelson, 6 T.C. 764, and Robert E. Werner, 7 T.C. 39. The following language appears in the latter case: "In the instant case, we think it is sufficiently clear that petitioner's wife merely held a bare legal title to Tri-State's tangible assets. We think it is equally clear that the income involved was not derived from mere ownership. Wilma Werner, though the title holder, did not engage in the business which created the income. * * *" We follow the Nelson and Werner cases as to this point as it is our view that the income was created by the use of the assets of the business in connection with the ability and organization of petitioner. The bare legal title to the assets is not the essential element in the production of the income. The evidence before us of the necessity for business management and care in the raising of fine Hereford cattle will not permit a conclusion that income is derived merely from ownership of the cattle. "Constant care" was required, "proper brood blood lines" are necessary, and understanding of "outcrops and the types of breeding" are essential. Mere ownership *210 will not work such results. As to the partnership question, we therefore hold for the respondent. Under stipulation, credit for two dependents is to be allowed the petitioner. Decision will be entered under Rule 50.